No. 728

First Circuit

SINITIERE v. MORRIS

(January 26, 1931. Opinion and Decree.)
(March 3, 1931. Rehearing Refused.)

Borah, Himel & Bloch, of Franklin, attorneys for plaintiff, appellant.

Wilbur P. Kramer, of Franklin, and John A. Smith, Jr., of New Orleans, attorneys for defendant, appellee.

ELLIOTT, J. Jules Sinitiere, employed by Marvin Morris in cutting, carving, and polishing marble, alleges that on May 9, 1929, he received an injury while so employed by said Morris producing in him a temporary total disability to do work of any reasonable character for a time, the total of which was 40 weeks.

That he was receiving a weekly wage of $30 per week. He claims as compensation 65 per cent of his weekly wage, or $19.50 per week for a period of 40 weeks, and, in addition, $14.50 for his expenses on a trip to New Orleans, made at the request of the insurance company, $68 on account of fees of Dr. Kappel, $10 for Dr. Cazenavette, and $24.50 on account of expenses going to and from New Orleans, a total of $117. But judgment for $102.50 only is prayed for on said account.

He further prays that a fee of 20 per cent of the amount recovered be approved against himself as a fee in favor of his attorney.

The defendant denies liability.

The plaintiff's demand was rejected in the lower court, and he has appealed.

The defendant filed an exception of no right and no cause of action. It was overruled in the lower court. Defendant urges that it should have been sustained.

The petition alleges.:

"That on the 9th of May, 1929, while cutting, carving and polishing marble for the defendant in defendant's said plant under his said employment, he struck his right thumb on the marble and injured it to such an extent as to suffer temporary total disability to do work of any reasonable character. That immediately upon sustaining said injury, he notified his employer; that the said employer, besides, had personal knowledge of the accident. That the disability was incurred while performing services arising out of his work and incidental to his employment."

The petition contains other averments, but we do not think it worthwhile to quote them.

We understand defendant's contention to be that the petition does not show that the alleged injury was wholly and accidentally received in defendant's service.

The averments of the petition taken as a whole satisfies the requirements of the law, Act No. 20 of 1914, sec. 18, etc. (amended by Act No. 85 of 1926, p. 120).

The exception was properly overruled.

The defendant attacks the credibility of the plaintiff as a witness, and also urges that the testimony of a witness upon whom he depends is contradicted, by written statements previously made by the same witness, that plaintiff and his main witness are so discredited that the claim should not be regarded as proven. The district judge rejected plaintiff's demand without assigning reasons.

The alleged ground of action is that plaintiff struck his right thumb on a piece of marble. As a witness. he testified that he was using the emery polisher polishing marble between 9 and 11 o'clock in the morning; that the emery slipped and he struck his thumb against the marble.

Asked whether his injury was caused by an air hammer or a blow, he said that it was caused by a blow. That after receiving the injury he continued his work, finishing the day, that he saw Mr. Morris the same evening and told him that he had struck his thumb on the marble and wanted to go to the doctor. He was then asked:

"Q. Did it pain you the day before?
"A. No, sir."

Further questioned he stated that Dr. Geismar, physician of the insurance company, was the first specialist he went to in New Orleans:

"Q. Tell the court what investigation he made of the injury?
"A. Dr. Geismar did not do anything at all for me. I went to his. office and he said he knew all about it and would not even listen to me. He never took the pains to even look at me."

Further answering he said that Dr. Geismar did not examine him, did not make an X-ray picture of his thumb, did not give him a prescription, but sent him to Dr. Cazenavette. In another place he was asked:

"Q. Did you make any statements to any one about this alleged accident?
"A. No, I have never made any statement to any one.
"Q. Are you sure about that?
"A. Yes.
"Q. Can you read and write?
"A. Yes."

He was then shown a statement and asked if he had signed it, and he admitted that he had, saying:

"I never made any statement, I only answered the questions that were asked me."

Returning now to the difference in recollection between Mr. Morris and himself, Mr. Morris as a witness testifies that plaintiff did not tell him that he had struck his hand on the marble, but at the same time he admits that on or about May 8 or 9, 1929, plaintiff came to him during the evening, showed him his hand and arm swollen, said he had been injured at his work and was going to a doctor. He quit work that day. It would be so natural for plaintiff to have told the defendant, when showing him his hand and telling him that he had been injured at his work, to further tell him how it happened, that we consider it likely that plaintiff did tell him, as he claims to have done, and that defendant had forgotten it. But suppose he did not tell him that he had injured it by striking it on the marble he was polishing, that makes no difference, as regards the liability of defendant for compensation. The admission that plaintiff showed him his hand, and that it was injured, and that plaintiff informed him that it had been received in his employ, was sufficient for the purpose of claiming compensation.

Another matter urged against the plaintiff is that he testifies that he went to New Orleans to see Dr. Geismar, physician of the insurance company, about his injury; that Dr. Geismar did not examine his hand and did not treat it, but sent him to Dr. Cazenavette, when as a matter of fact Dr. Geismar did examine his hand.

Dr. Geismar testifies that he did examine plaintiff's hand. He was unable to state the exact time, but that it was some time in July, 1929. He gave it as his opinion as the result of his examination that plaintiff was suffering from traumatic neuritis of the muscles of the right thumb, caused by vibration. He stated that plaintiff informed him that he had been using an electric hammer. He therefore gave it as his opinion that plaintiff's injury had been caused by the use of the electric hammer, and that the condition of plaintiff's thumb, in his opinion, could not have been produced by a single blow, but could have been brought about by the constant use of an electric hammer.

On this subject we are of the opinion that Dr. Geismar did examine plaintiff's hand sufficiently to form an opinion of the injury received, based on a history of the case received from the plaintiff. Dr. Geismar does not claim to have treated plaintiff's hand. We think it likely that plaintiff's idea that Dr. Geismar did not examine his hand is based upon the theory that he did not do so, because he did not treat him. The testimony of Dr. Geismar, however, does not tend to negative plaintiff's claim that he was injured while working for defendant in his marble plant. It only tends to show that it was not sustained by striking his thumb on the marble, as plaintiff claims, but was caused by the use of the electric hammer. The evidence was received without objection, and the difference between injury received by the use of the electric hammer and in striking the thumb on the marble, is not so important as the defendant contends that it is.

Another matter urged against plaintiff's

credibility is that as a witness he denied that he had made any statement about the accident, and denied that he had felt any pain in his thumb or hand on May 8, 1929.

He was then shown a written statement bearing his signature dated August 16, 1929, in which, among other matters, he states in a narrative way:

"On the day of May 9th, 1929, I did not use the pneumatic hammer, but the day prior, which was May 8th, 1929, I used the hammer at irregular intervals all day. During the day of May 8th, 1929 I felt a little pain in the thumb, mostly. I did not pay any mind to it and I worked throughout the day, and at night of that day the pain was still in my hand, and the following morning, which was May 9th, 1929, I found the hand a little swollen, but I went to work and the hand just kept getting worse and worse."

Not only that but as heretofore stated, referring to his testimony, he was asked:

"Q. Did it pain you the day before?
"A. No, sir."

The plaintiff explains his denial that he had signed a statement, saying that he had only answered questions. He was not asked to explain his testimony, as a witness, that he had not felt pain in his hand on the previous day, admitted to have been felt in this statement.

This statement signed by plaintiff is in the handwriting of another party, the agent of the insurance company carrying defendant's industrial insurance for any compensation he might be required to pay plaintiff. The document is in narrative form. We are satisfied the agent could have asked plaintiff questions and could then have put the matter about which he questioned the plaintiff in the narrative

form in which the document is written. The agent was not produced as a witness. Plaintiff, as a witness, must be looked on as seriously discredited by the recitals contained in this document produced against him. It happens, however, that the document, instead of helping to defeat plaintiff's claim, helps him in a very important way to recover.

The document in question was offered in evidence by the defendant without restriction as to any particular purpose, and was received in evidence without objection. Defendant produced and placed this evidence in the record. The document says nothing about an injury sustained by striking the thumb on marble being polished, but contains statements which, if true, justifies a conclusion that plaintiff received the injury which he suffered while using the electric hammer. So the effect is to confirm the fact that plaintiff did receive the injury in question while working for the defendant and in the course of his employment. The injury is established with certainty. There is no doubt about the injury having been received in the service of the defendant; that fact is not questioned. In the face of this certainty the fact that it is more likely to have been caused on May 8, 1929, by the use of an electric hammer, than on May 9, 1929, by striking the thumb on marble being polished, cannot defeat the recovery when the former way of injury is shown without objection.

Defendant also attacks the testimony of the local physician who treated plaintiff's hand on the evening of May 9, 1929.

This physician testifies that when he first examined plaintiff's thumb he diag-

nosed the injury to have been of the tendon of the thumb and treated it accordingly. He admits that the injury to the tendon could have been caused by a shock from a pneumatic hammer, but he gave it as his opinion that the injury had been caused by a blow; that he treated plaintiff's hand for some time, and, as it did not improve, he sent plaintiff to another doctor, who specialized in industrial injuries. This doctor, according to the local physician, diagnosed the injury as due to a nervous trouble. The local physician was called on by parties interested in the defense for a report of plaintiff's condition. He reported to these parties that plaintiff's trouble was a nervous trouble, and signed another report in which he described plaintiff's injury as paralysis of the thumb.

Asked to explain how he came to report in the way stated, when, according to his opinion expressed as a witness on the trial, the injury had been caused otherwise, he explained that his first opinion and diagnosis of the injury was that the tendon of plaintiff's thumb had been injured, but that, when he got reports from certain other doctors who had examined him as experts and pronounced the trouble of nervous origin, etc., he yielded his opinion to theirs, and reported accordingly. That finally, upon receiving the report of the physician who last treated plaintiff and cured him by an operation, he found that his first diagnosis was correct.

Taking into consideration these explanations we do not give the matter the importance which defendant claims for it. We admit, for the sake of argument, that the local physician should not have reported the opinion of other physicians as being his own, yet the testimony of none of the physicians tends to negative the fact of injury. The only difference between them is a matter of opinion, whether it was caused by vibration or a blow, and, as heretofore stated, the situation is such that in this case it makes no difference. The plaintiff is entitled to recover either way, the injury by vibration being shown without objection.

The plaintiff complains that a physician on whose testimony he relied wrote the local physician that the condition of plaintiff's thumb was, in his opinion, of traumatic origin, but about a month and a half later, when his testimony was taken by commission, he was asked to express an opinion as to the origin of the ailment, and replied that he did not know the cause. We dismiss this contention as having no bearing on the result. The physician in question says nothing tending to negative the claim of the plaintiff that he was injured in the service of the defendant. The effect of the evidence is rather to confirm the fact.

We will now state in conclusion that all the evidence in the case, that introduced by the plaintiff as well as that introduced by defendant, proves beyond question that plaintiff received an accidental injury to his thumb, involving the use of his hand, while working in the employ of the defendant and in the work in which he was engaged to do. And under the preponderance of the proof and the evidence, the most satisfactory and convincing on the subject received without objection, it was caused by the use of the pneumatic hammer.

Under the evidence the plaintiff is entitled to recover on account of said injury for the period of time claimed in the petition.

The plaintiff claims, in addition for the fees of his physicians, and under the law, Act No. 20 of 1914, section 8, subsection 5 (amended by Act No. 242 of 1928, p. 361), he is entitled to recover up to a certain extent on that account. Dr. A. C. Cappel is due $68; Dr. L. L. Cazenavette has a bill for $25; but the plaintiff only claims for him $10, a total of $78.

The plaintiff urges further claims on account of expenses, but his claim in that respect has not been satisfactorily established and will not be allowed.

The judgment rejecting plaintiff's demand is erroneous and contrary to law and the evidence and will therefore be annulled, avoided, and judgment rendered in favor of plaintiff as prayed for.

For these reasons the judgment appealed from herein is now annulled, avoided, and set aside, and it is now ordered, adjudged, and decreed that there be judgment for compensation in favor of the plaintiff Jule Sinitiere and against the defendant Marvin Morris, for 65 per cent of a weekly wage, or $19.50 per week commencing on May 10, 1929, and to continue until October 24, 1929, and commencing on December 16, 1929, and continuing until April 7, 1930, a total of 40 weeks; the weekly installments to each draw interest at the rate of 5 per cent from the time due until it has been paid. That there be further judgment in favor of the plaintiff and against defendant for $78 for the services of physicians.

A fee of 20 per cent on the amount of this judgment is approved against the plaintiff in favor of his attorneys, as prayed for in his petition.

Defendant to pay the cost in both courts.